IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

-----------------------------------------------------------------x

EAST ORANGE BOARD OF EDUCATION ("EBOE") and NEW JERSEY SCHOOLS INSURANCE GROUP ("NJSIG"),

        Plaintiffs,

v.

GREAT AMERICAN INSURANCE COMPANY ("GAIC")

        Defendant.

Case No. 2:21-cv-15132

-----------------------------------------------------------------x

**DEFENDANT'S REPLY BRIEF IN FURTHER SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT**

THE DRATCH LAW FIRM
Stephen N. Dratch (sdratch@njcounsel.com)
Daniel Lebersfeld (dlebersfeld@gmail.com)
354 Eisenhower Parkway
Livingston, New Jersey 07039
(973) 992-3700
*Counsel for Defendant Great American Insurance Company*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................... ii

PRELIMINARY STATEMENT ........................................................................... 1

ARGUMENT .......................................................................................................... 2

    I.    THERE IS NO COVERAGE UNDER THE COMPUTER FRAUD INSURING AGREEMENT .................................................................. 2

        A.    Plaintiffs Have Not Met Their Burden To Rebut Great American's *Prima Facie* Showing That There Is An Absence of Evidence To Establish Causation ........................................................................ 2

        B.    Any Impersonation Of EOBOE Personnel By The Fraudsters Did Not "Directly" Cause The Loss ..................................................... 7

    II.    THERE IS NO COVERAGE UNDER THE FORGERY INSURING AGREEMENT ................................................................................... 13

CONCLUSION ..................................................................................................... 15

# TABLE OF AUTHORITIES

**Cases**

*Ad Advertising Design, Inc. v. Sentinel Ins. Co., Ltd.*, 344 F. Supp. 3d 1175
(D. Mo. 2018) .................................................................................................. 14

*Arthur Anderson LLP v. Federal Ins. Co.*, 416 N.J. Super. 334 (App. Div. 2010) ......... 3

*Auto Lenders Acceptance Corp. v. Gentilini Ford, Inc.*, 181 N.J. 245 (2004) ........... 8, 9

*Brightpoint, Inc. v. Zurich Am. Ins. Co.*, No. 1:04-CV-2085,
2006 WL 693377 (S.D. Ind. Mar. 10, 2006) ...................................................... 11

*Buying For The Home LLC v. Humble Abode, LLC*, 459 F. Supp. 2d 310
(D. N.J. 2006) ..................................................................................................... 5

*Cadre v. Proassurance Cas. Co.*, No. 16-0103, 2016 WL 3844208
(D. N.J. July 14, 2016) ....................................................................................... 2

*Causeway Automotive, LLC v. Zurich Am. Ins. Co.*, No. 20-8393, 2021 WL 486917
(D. N.J. Feb. 10, 2021) ....................................................................................... 9

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ............................................................. 3

*Children's Place, Inc. v. Great Am. Ins. Co.*, No. 18-11963, 2021 WL 6932533
(D. N.J. Sept. 28, 2021) .................................................................................... 13

*CustomMade Ventures Corp. v. Sentinel Ins. Co.*, 2012 WL 4321060
(D. Mass. Sept. 17, 2012) ................................................................................. 14

*Duquesne Light Holdings, Inc. v. Commissioner of Internal Revenue*, 861 F.3d 396
(3d Cir. 2017) ..................................................................................................... 3

*First State of Monticello v. Ohio Cas. Ins. Co.*, 555 F.3d 564 (7th Cir. 2009) ............. 12

*Franklin Packaging Co. v. Cal. Union Ins. Co.*, 171 N.J. Super. 188
(App. Div. 1979) ........................................................................................... 9, 13

*Longobardi v. Chubb Ins. Co. of N.J.*, 121 N.J. 530 (1990) ........................................ 12

*Medidata Solutions, Inc. v. Federal Ins. Co.*, 268 F. Supp. 3d 471
(S.D.N.Y. 2017), *aff'd* 729 F. App'x 117 (2d Cir. 2018) .................................... 10

*Mississippi Silicon Holdings, LLC v. AXIS Ins. Co.*, 440 F. Supp. 3d 575
(N.D. Miss. 2020) .............................................................................................. 12

*Point 4 Data Corp. v. Tri-State Surgical Supply & Equip., Ltd.*, No. 11-CV-726,
2013 WL 4409434 (E.D.N.Y. Aug. 2, 2013) ....................................................... 6

*Ramara, Inc. v. Westfield Ins. Co.*, 814 F.3d 660 (3d Cir. 2016) .................................. 5

*Robertson v. Allied Signal, Inc.*, 914 F.2d 360 (3d Cir. 1990) ...................................... 5

*Ryeco, LLC v. Selective Ins. Co.*, 539 F. Supp. 3d 399 (E.D. Pa. 2021) ...................... 14

*Sanderina, LLC v. Great Am. Ins. Co.*, No. 18-0772, 2019 WL 4307854
    (D. Nev. Sept. 11, 2019) ................................................................................ 13, 14

*Schmidt v. Currie*, 217 Fed. Appx. 153 (3d Cir. 2007) .................................................. 6

*SJ Computers, LLC v. Travelers Cas. & Sur. Co.*, 621 F. Supp. 3d 962
    (D. Minn. 2022) .................................................................................................. 11

*Taylor & Lieberman v. Fed. Ins. Co.*, 681 Fed. Appx. 627 (9th Cir. 2017) ................. 15

*Travelers Cas. & Sur. Co. of Am. v. Baptist Health Sys.*, 313 F.3d 295
    (5th Cir. 2002) .............................................................................................. 14, 15

*United States v. Ganier*, 468 F.3d 920 (6th Cir. 2006) ................................................. 6

*V.C. by Costello v. Target Corp.*, 454 F. Supp. 3d 415 (D. N.J. 2020) .......................... 3

*Valley Community Bank v. Progressive Cas. Ins. Co.*, 854 F. Supp. 2d 697
    (N.D. Cal. 2012) ................................................................................................. 11

**Rules**

Fed. R. Evidence 701 ...................................................................................................... 6

Fed. R. Evidence 702 ...................................................................................................... 6

## PRELIMINARY STATEMENT[1]

Plaintiffs' Opposition does not meaningfully dispute that their forensic investigator, Kroll, did not and could not determine whether the "fraudsters" who sent the January 23 Email were responsible for any intrusions into EOBOE's computer system that supposedly enabled them to perpetrate their scheme. Indeed, Plaintiffs' statement of material facts in support of their cross-motion carefully avoids asserting such a connection. Rather, Plaintiffs' Brief resorts to sleight of hand and conjecture in an attempt to attribute the network intrusions Kroll did discover to the "fraudsters." As it is Plaintiffs' undisputed burden to ultimately prove the underlying facts that they claim give rise to coverage under the Policy, including causation, the speculative theory of their attorneys (as opposed to a properly grounded opinion of an expert witness, which Plaintiffs admittedly did not obtain) does not create an issue of material fact sufficient to defeat Great American's motion for summary judgment, much less prove coverage.

---

[1] Unless otherwise stated, capitalized terms used herein have the same meaning as set forth in Great American's Memorandum of Law in Support of its Motion for Summary Judgment ("Opening Brief" or "Open.") (ECF Doc. No. 31). Plaintiffs' papers in opposition to Great American's motion for summary judgment and in support of their cross-motion for summary judgment (ECF Doc. Nos. 35-36) are referred to, collectively, as the "Opposition." Citations to Plaintiffs' Brief in Opposition to Great American's Summary Judgment Motion and In Support of its Cross-Motion for Summary Judgment ("Plaintiffs' Brief") (ECF Doc. No. 35-13) are denoted as "PlBr. __." Citations to Plaintiff's Statement of Material Facts In Support of Its Cross-Motion for Summary Judgment (ECF Doc. No. 36-12) are denoted as "PSUMF___". Citations to Plaintiff's Response to Defendant's Statement of Undisputed Material Facts (ECF Doc. No. 36-11) are denoted as "PR-SUMF__."

Accordingly, there is no admissible evidence that any "impersonation" of EOBOE personnel caused the Loss, directly or otherwise. *See* Point I(A), *infra*.

But even accepting the Opposition's speculation that the impersonation of EOBOE personnel supposedly set in motion a chain of events that eventually caused EOBOE to wire funds to the fraudsters, the connection between the impersonation (to the extent it can even be precisely ascertained) and the Loss is simply too attenuated to be direct as the Policy requires. *See* Point I(B), *infra*. Otherwise, the Opposition's attempted face-saving argument that the Forgery Insuring Agreement is somehow ambiguous cannot stand in the face of the overwhelming authority that holds it does not cover the type of loss Plaintiffs' incurred here. *See* Point II, *infra*. Accordingly, the Opposition only confirms that Great American's motion should be granted, and Plaintiffs' cross-motion denied.

## ARGUMENT

**I.   THERE IS NO COVERAGE UNDER THE COMPUTER FRAUD INSURING AGREEMENT**

    **A.   Plaintiffs Have Not Met Their Burden To Rebut Great American's *Prima Facie* Showing That There Is An Absence of Evidence To Establish Causation**

The Opposition does not, because it cannot, dispute that Plaintiffs bear the burden of proof at trial to establish that the Loss is covered under the Policy. *See, e.g.*, *Wurst v. State Farm Fire & Cas. Co.*, 431 F. Supp. 2d 501, 504 (D. N.J. 2006); *Cadre v. Proassurance Cas. Co.*, No. 16-0103, 2016 WL 3844208, at *4 (D. N.J. July 14, 2016)

2

(McNulty, *J.*) ("It is axiomatic that the party seeking coverage bears the burden of bringing its claim within the basic terms of the insurance policy.") (citation omitted). Plaintiffs' burden includes establishing that any "impersonat[ion]" of EOBOE personnel that enabled access to the EOBOE's computer systems "directly" caused the Loss (Policy § B.5). *Arthur Anderson LLP v. Federal Ins. Co.*, 416 N.J. Super. 334, 348-49 (App. Div. 2010) (insured's failure to present sufficient evidence linking any loss of business with World Trade Center attacks required grant of summary judgment in favor of insured). Accordingly, it is not Great American's burden to "proffer[] an alternative theory of causation," as Plaintiffs incorrectly claim. (PlBr.24). Rather, as the Supreme Court has long recognized, Great American's burden as the movant under these circumstances is to show "that there is an absence of evidence supporting the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *see also V.C. by Costello v. Target Corp.*, 454 F. Supp. 3d 415, 423 (D. N.J. 2020) (McNulty, *J.*) (same). Or, as the Third Circuit has described, the movant who otherwise does not bear the burden of proof at trial (like Great American) "may meet its initial burden merely by pointing to the absence of evidence supporting essential elements of the non-moving party's case." *Duquesne Light Holdings, Inc. v. Commissioner of Internal Revenue*, 861 F.3d 396, 403-04 (3d Cir. 2017) (citation omitted).

Plaintiffs ignore their burden to ultimately prove that the Policy covers the Loss and Great American's concomitant burden on its summary judgment motion only to

3

demonstrate the absence of sufficient evidence supporting a necessary element of Plaintiffs' causes of action, in this case, causation. Instead, Plaintiffs' Brief resorts to misdirection by repeatedly referring to the "the fraudsters" as among those who gained unauthorized access to the Microsoft Office 365 accounts of EOBOE employees, created unauthorized mailbox rules in their email accounts, and synchronized the contents of those accounts. (*See, e.g.*, PlBr. 9-10). Repetition of this false premise does not make it true. To the contrary, Kroll's corporate representative testified that its investigation made no determination as to whether "the fraudsters," *i.e.* the individual(s) responsible for sending the January 23 Email, gained unauthorized access to EOBOE personnel's email accounts, created unauthorized mailbox rules, or synced the contents of those accounts. (SUMF ¶¶ 21, 26-27, Ex. F at 86:23-87:18, 87:8-19, 89:18-91:24; *see also* PR-SUMF ¶¶ 26-27).[2] ███

███

███ (SUMF ¶ 22, Ex. F at 80:11-82:13). ███

███ (SUMF ¶ 23, Ex. F 44:4-21, 151:7-

---

[2] ███ (*Id.* ¶ 26, Ex. F 187:24-188:5).

16).³ Thus, it is hardly surprising that Plaintiffs' statement of material facts avoids stating that the "fraudsters" performed any of the acts that Kroll's investigation uncovered, and, indeed, conspicuously avoids using that term altogether when describing Kroll's investigation. (*See* PSUMF ¶¶ 35-58).

Nor does any suggestion that the "fraudsters" must have used previously gained unauthorized access ███████████████████████████████ ███████████████████████████████ create an issue of material fact. This is so as Plaintiffs "may not rest on speculation and conjecture in opposing a motion for summary judgment," much less in support of their own cross-motion for summary judgment. *Ramara, Inc. v. Westfield Ins. Co.*, 814 F.3d 660, 666 (3d Cir. 2016); *see also Robertson v. Allied Signal, Inc.*, 914 F.2d 360, 382 n.12 (3d Cir. 1990) ("We note than an inference based upon speculation or conjecture does not create a material

---



3 ███████████████████████████████ are inadmissible hearsay, and therefore cannot create an issue of material fact. *Buying For The Home LLC v. Humble Abode, LLC*, 459 F. Supp. 2d 310, 321 (D. N.J. 2006).

factual dispute sufficient to defeat entry of summary judgment.") (citation omitted). Rather, courts have held that conclusions based on forensic examinations and analyses of computer systems require expert testimony as they are necessarily based on "scientific, technical or other specialized knowledge" under Fed. R. Evidence 702. *See Point 4 Data Corp. v. Tri-State Surgical Supply & Equip., Ltd.*, No. 11-CV-726, 2013 WL 4409434, at *12-13 (E.D.N.Y. Aug. 2, 2013) (not considering declaration of plaintiff's CEO regarding defendant's alleged modification of plaintiff's licensed software where CEO was not disclosed as an expert witness), *report and recommendation adopted in relevant part by*, 2013 WL 5502852 (E.D.N.Y. Oct. 1, 2013); *see also United States v. Ganier*, 468 F.3d 920, 925-26 (6th Cir. 2006) (holding that trial court did not err in ruling that FBI agent who determined that search terms were run on certain computers should have been disclosed as an expert witness). Accordingly, the linking of the unauthorized access that Kroll did discover to "the fraudsters," especially when Kroll made no such determination, is simply an opinion of Plaintiffs' attorneys that is obviously inadmissible under Fed. R. Evidence 701(c), which prevents lay witnesses from testifying as to "scientific, technical or other specialized knowledge," and therefore does not create an issue of material fact. *Schmidt v. Currie*, 217 Fed. Appx. 153, 157-58 (3d Cir. 2007) (granting summary judgment where plaintiff failed to disclose expert witness on issue of whether attorneys exercised professional legal judgment in bringing underlying suit).

6

In sum, a careful reading of the Opposition confirms that Plaintiffs are unable to point to even a "scintilla" of evidence linking the "fraudsters" to whatever unauthorized access Kroll managed to uncover. Indeed, Kroll itself denied that its investigation revealed any such link, which establishes Great American's *prima facie* right to summary judgment. Plaintiffs' Brief's repeated references to the "fraudsters" as being among the individuals responsible for the unauthorized access Kroll discovered constitute, at best, a lay opinion of their attorneys, which is simply not enough to create an issue of material fact. Accordingly, the Court should grant Great American's summary judgment motion on the grounds that there is an absence of evidence demonstrating that any impersonation of EOBOE personnel caused the Loss, "directly" or otherwise.

B.  **Any Impersonation Of EOBOE Personnel By The Fraudsters Did Not "Directly" Cause The Loss**

Given that the Opposition cites nothing in the record that establishes what the fraudsters did beyond registering the "carhasoft" domain name and sending the January 23 Email (PSUMF ¶¶ 17-21), it is difficult to assess Plaintiffs' theory of causation on its own terms.[4] (Indeed, it demonstrates why Great American's motion for summary judgment should be granted). As best as Great American can tell, the Opposition theorizes that the "fraudsters" impersonated EOBOE personnel by using their illicitly

---

[4] Plaintiffs' claim as to the date and time the "carhasoft.com" domain name was registered is supported by allegations contained in a letter from a representative of NJSIG (PSUMF ¶ 17, Pashman Dec. Ex. 1 at GAIC000413), which is inadmissible hearsay.

7

obtained login credentials to gain access to their Office 365 accounts. (PlBr. 9). Plaintiffs claim "[t]his unauthorized access also allowed the fraudsters to view emails and to synchronize the compromised accounts with another computer." (*Id.* 10). This, in turn, would have permitted the fraudsters to locate the email communications between EOBOE and Dolly Lilly into which they "inserted" themselves using the altered "carhasoft" email domain. (PlBr. 6).

Plaintiffs' theory, even taken at face value, impermissibly reads the word "directly" out of the Computer Fraud Insuring Agreement, and asserts that it is only necessary that an insured risk occur somewhere along the chain of causation. Of course, none of the authorities the Opposition cites stand for this illogical proposition. For example, in *Auto Lenders Acceptance Corp. v. Gentilini Ford, Inc.*, the case in which the New Jersey Supreme Court applied the proximate cause test to fidelity policies that provide coverage for "direct" losses, the insured's employee engaged in a scheme whereby he accepted fraudulent credit applications from prospective automobile purchasers, based upon which third-party lenders advanced money to the insured. 181 N.J. 245, 250-51 (2004). When the lenders discovered the fraudulent loan applications, the insured became liable to the lenders for the defaults of the purchasers. *Id.* at 251. The Court held that, under the proximate cause test, the loss was directly caused by the policy's coverage for employee dishonesty. *Id.* at 259-60. While the Court recited "Appleman's Rule" in adopting the proximate cause test, Plaintiffs' Brief (PlBr. 18)

8

tellingly omits the operative language the Court quoted: "In other words, it has been held that recovery may be allowed the insured risk was the last step in the chain of causation set in motion by an uninsured peril, *or where the insured risk itself set into operation a chain of causation in which the last step may have been an excepted risk.*" *Id.* at 257 (quoting 5 John Alan Appleman, *Insurance Law & Practice* § 3083, at 309-11 (1970) ("Appleman's Rule")) (emphasis added). That is, to the extent the insured risk sets in motion a chain of events, Appleman's Rule only applies if the insurer seeks to disclaim coverage on the basis of an exclusion, which is not the case here.

Thus, in another case the Opposition cites (PlBr. 22-23), *Franklin Packaging Co. v. Cal. Union Ins. Co.*, the court held that flooding in the insured's warehouse was directly caused by vandalism even though the flooding would not have occurred but for the insured's plumbers having negligently blocked a drainage pipe with an errantly placed burlap bag, which the insurer argued was subject to a policy exclusion for any "loss caused by, resulting from, contributed to or aggravated by . . . water which backs up through sewers or drains." 171 N.J. Super. 188, 189-90 (App. Div. 1979). In quoting Appleman's Rule in detail, the *Franklin Packaging* court made clear that an insured risk that sets in motion a subsequent chain of events must still be "'the efficient or predominant cause which sets in motion the chain of events producing the loss.'" *Id.* at 191 (quoting Appleman's Rule).  Thus, this Court in *Causeway Automotive, LLC v. Zurich Am. Ins. Co.*, (cited in Great American's Opening Brief, but which Plaintiffs'

9

Brief ignores) held that, under New Jersey law, proximate cause is not determined by "where in the sequence the alleged cause of loss occurred, but what was the predominant cause that produced the loss." No. 20-8393, 2021 WL 486917, at *5 (D. N.J. Feb. 10, 2021) (citation omitted). Thus, "predominant causation" *is* the law, as "Appleman's Rule" and the caselaw Plaintiffs' Brief cites both reveal.

The other case upon which the Opposition relies to support its argument of direct loss, *Medidata Solutions, Inc. v. Federal Ins. Co.*, 268 F. Supp. 3d 471 (S.D.N.Y. 2017), *aff'd* 729 F. App'x 117 (2d Cir. 2018), only serves to undermine further Plaintiffs' position. There, the insured was the target of a social engineering scheme in which the fraudster's spoofed email contained embedded code that provided instructions to the insured's computer systems to display different email addresses in the "From" field. *Id.* at 476. The district court held that the use of the embedded code came within the ambit of the policy's computer fraud insuring agreement, which covered the "entry of Data into or deletion of Data from a Computer System" or any "change to the Data Elements or program logic of a Computer System, which is kept in machine readable format." *Id.* at 476-77. As relevant here, the court further held that the spoofed email that contained the embedded code directly caused the insured to transfer funds to the fraudster, rejecting the insurer's argument that there was "no direct nexus" between the email and wire transfer because the fraudster made telephone calls to the insured and the insured took other steps in approving the transfer of funds. *Id.* 478-79. Here, unlike in *Medidata*, the January 23

10

Email itself is not a risk covered under the Computer Fraud Insuring Agreement, and the link between the theorized (and unsupported) impersonation of EOBOE personnel by the "fraudsters" and the ultimate transfer of funds is far more attenuated than in *Medidata*, and certainly not the "predominant cause" as New Jersey law commands, and which is consistent with how other courts have applied proximate causation to fidelity policy losses. *Valley Community Bank v. Progressive Cas. Ins. Co.*, 854 F. Supp. 2d 697, 710 (N.D. Cal. 2012); *Brightpoint, Inc. v. Zurich Am. Ins. Co.*, No. 1:04-CV-2085, 2006 WL 693377, at *7 (S.D. Ind. Mar. 10, 2006).

Plaintiffs' misreading of the caselaw not only excises the word "directly" from the Computer Fraud Insuring Agreement in the Great American Policy, but also from the Fraudulent Instruction Insuring Agreement in the Beazley Policy which expressly covered "resulting direct*ly* from an Insured having transferred, paid, or delivered any Money . . . as a direct result of Fraudulent Instructions provided by a person purporting to be a Vendor, Client, or an Authorized Employee." (SUMF ¶ 28, Ex. E). Not surprisingly, Plaintiffs cite no law at all that suggests that the same loss can have two distinct "direct" causes, and, as is typical of the Opposition, ignores the principle that different aspects of a fraudulent scheme should not "be fragmented into pieces and each viewed in isolation" for purposes of determining what constitutes a direct loss under two different insuring agreements that the insured seeks to cover the same loss. *SJ Computers, LLC v. Travelers Cas. & Sur. Co.*, 621 F. Supp. 3d 962, 965 (D. Minn. 2022);

11

*see also Mississippi Silicon Holdings, LLC v. AXIS Ins. Co.*, 440 F. Supp. 3d 575, 584 (N.D. Miss. 2020) (noting that "[h]ad the Computer Transfer Fraud provision been intended to cover a loss occurring when a funds transfer was effectuated by an employee acting in good faith reliance upon an electronic instruction which was ultimately determined to be fraudulent (exactly what occurred in this case), the same language used in the Social Engineering Fraud provision could have been incorporated into the Computer Transfer Fraud provision"), *aff'd*, 843 Fed. Appx. 581 (5th Cir. 2021).

Nor do any rules of contract construction command a contrary result, as Plaintiffs' Brief insinuates. (PlBr. 12-13). Rather, given that Plaintiffs do not, and cannot, claim that anything about the Computer Fraud Insuring Agreement is ambiguous, it must be interpreted according to its plain meaning, and should not be given "a strained construction to support the imposition of liability." *Longobardi v. Chubb Ins. Co. of N.J.*, 121 N.J. 530, 537 (1990). But even if there were some ambiguity, the Policy should not be "strictly" construed against Great American, considering that the Computer Fraud Insuring Agreement was drafted by the Surety Association of America, not Great American (Response to PSUMF at ¶ 59, Ex. A). *See, e.g., First State of Monticello v. Ohio Cas. Ins. Co.*, 555 F.3d 564, 568 (7th Cir. 2009) ("Standard fidelity bonds are drafted by sophisticated parties (representatives of the banking and insurance industries); therefore, the traditional rule of construing any ambiguity in favor of coverage does not apply.") (citations omitted).

12

In sum, the Computer Fraud Insuring Agreement's requirement that a loss must be "directly" caused by an impersonation of an insured has a definite meaning that assuredly does not mean that *any* loss along a line of causation involving an insured risk is covered. Rather, under New Jersey law, it must be "the *efficient or predominant cause* which sets in motion the chain of events producing the loss." *Franklin Packaging Co.*, *supra*, 171 N.J. Super. at 191 (quoting "Appleman's Rule") (emphasis added). As Plaintiffs effectively concede that any impersonation by the fraudsters was not the predominant or efficient cause of the Loss, given their flawed argument that that test does not apply, there is no coverage under the Computer Fraud Insuring Agreement even assuming, *arguendo*, that their causation theory finds sufficient factual support in the record, which it does not.

## II.   THERE IS NO COVERAGE UNDER THE FORGERY INSURING AGREEMENT

Plaintiffs' attempt to avoid summary dismissal of its claim under the Forgery Insuring Agreement need not detain the Court long. For starters, at least two courts, including this one, have held that a spoofed email that induces the insured to wire funds to an imposter are not covered under the exactly worded insuring agreement contained in the Policy. *Children's Place, Inc. v. Great Am. Ins. Co.*, No. 18-11963, 2021 WL 6932533, at *6-7 (D. N.J. Sept. 28, 2021); *Sanderina, LLC v. Great Am. Ins. Co.*, No. 18-0772, 2019 WL 4307854, *3 (D. Nev. Sept. 11, 2019). In addition, courts that have considered similarly worded insuring agreements have virtually universally held that the

13

phrase "'direction to pay a sum certain in money'" to be similar' to 'checks, drafts, [and] promissory notes.'" *Sanderina*, 2019 WL 4307854, at *3 (alteration in original); *see also CustomMade Ventures Corp. v. Sentinel Ins. Co.*, 2012 WL 4321060, at **4-5 (D. Mass. Sept. 17, 2012); *Travelers Cas. & Sur. Co. of Am. v. Baptist Health Sys.*, 313 F.3d 295, 299 (5th Cir. 2002). Indeed, Plaintiffs' Brief does not even bother to cite to the only case Plaintiffs discovered during the claims process that reached a contrary result (*Ad Advertising Design, Inc. v. Sentinel Ins. Co., Ltd.*, 344 F. Supp. 3d 1175, 1183 (D. Mo. 2018)), implicitly recognizing that it is "an outlier." *Ryeco, LLC v. Selective Ins. Co.*, 539 F. Supp. 3d 399, 407 (E.D. Pa. 2021).

Plaintiffs attempt to sweep aside the overwhelming weight of authority that rejects their interpretation of the Forgery Insuring Agreement by arguing (as best Great American can follow) that the January 23 Email is an "alteration" of a "direction[] to pay a sum certain" because the instructions from the fraudster(s) contained therein changed "any number of the characteristics" of the payment instructions from Dolly Lilly in her communications with EOBOE personnel in the earlier portions of the email chain, or at least that a factfinder could so find. (PlBr. 29). This strained reading ignores the requirement contained in the Forgery Insuring Agreement that the "directions to pay a sum certain in money" be "made or drawn upon you" or "by one acting as your agent." (Policy § B.2). As neither the Invoice nor the emails between the real Dolly Lilly and EOBOE were "made or drawn upon" Plaintiffs, there is no coverage under the Forgery

14

Insuring Agreement even if the January 23 Email is an "alteration" of "directions to pay a sum certain." *See, e.g.*, *Taylor & Lieberman v. Fed. Ins. Co.*, 681 Fed. Appx. 627, 629 (9th Cir. 2017) ("even if the [spoofed] emails were considered equivalent to checks or drafts, they were not 'made, drawn by, or drawn upon' [ ] the insured. Rather, they simply directed [the insured] to wire money from [the insured's] client's account."); *Baptist Health Sys.*, 313 F.3d at 299 (holding that forged invoices were not covered by forgery or alteration insuring agreement because they "were not made, drawn by, or drawn upon [the insured] as those terms are used in the commercial paper context or under the Uniform Commercial Code").

In sum, Plaintiffs fail to provide a valid reason why the Court should depart from the virtually unanimous authority that holds the Forgery Insuring Agreement has no applicability here. Accordingly, the Court should dismiss Plaintiffs' claims to the extent they invoke that insuring agreement.[5]

## CONCLUSION

For all of the foregoing reasons and for the reasons stated in its Opening Brief, defendant Great American Insurance Company respectfully requests that the Court grant its motion for summary judgment and deny Plaintiffs' cross-motion for summary judgment.

---

[5] Given that Plaintiffs' cross-motion for summary judgment does not invoke the Forgery Insuring Agreement, Great American expects that they will not present further argument on that issue in their reply brief.

15

Dated: July 28, 2023

        THE DRATCH LAW FIRM

        /s/   Stephen N. Dratch
        Stephen N. Dratch (sdratch@njcounsel.com)
        Daniel Lebersfeld (dlebersfeld@gmail.com)
        354 Eisenhower Parkway
        Livingston, New Jersey 07039
        (973) 992-3700
        *Counsel for Defendant Great American Insurance Company*